IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MARTREK WINGO**                                                                    **PLAINTIFF**

v.                                                           No. 3:21cv83-MPM-RP

**AMAZON SERVICES, LLC**                                         **DEFENDANT**

## ORDER

This cause comes before the court on the motion of defendant Amazon Services, LLC for summary judgment, pursuant to Fed. R. Civ. P. 56. The *pro se* plaintiff Martrek Wingo has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that it is well taken and should be granted.

This is, *inter alia*, a Title VII sex discrimination case arising out of discrimination and/or harassment allegedly suffered by plaintiff at Amazon's "fulfillment center" located in Byhalia, Mississippi. Plaintiff was initially terminated by Amazon on January 8, 2021 after an investigation found that certain allegations of sexual misconduct raised against him by a female co-worker named Olivia Turnbow had been substantiated. [Exhibit U at 2-3]. Plaintiff successfully appealed the termination decision, and he returned to work on February 4, 2021. [Ex. O, Correspondence to Plaintiff Regarding Outcome of Appeal.] On August 14, 2021, plaintiff voluntarily resigned from his position at Amazon, allegedly to focus on this lawsuit against the company. [Plaintiff's deposition at 39-41]. In his complaint, plaintiff alleges that he suffered unlawful discrimination and/or retaliation on the basis of his sex and age, and he seeks monetary damages as a result. Defendant has presently moved for summary judgment, arguing

1

that there is no genuine issue of fact regarding its liability in this case and that it is entitled to judgment as a matter of law.

In addressing the summary judgment issues in this case, this court begins with the observation that it is generally quite difficult to determine exactly how much leeway should be granted to *pro se* plaintiffs in making out their claims. On the one hand, the law is the law, and a defendant such as Amazon has every right to demand that its provisions be applied in this case, just as in any other. On the other hand, this court is very much aware of how complex and difficult federal employment discrimination law can be, and, that being the case, it is understandable if a *pro se* plaintiff is unable to grasp, particularly at the outset of the litigation, exactly what the law requires him to prove. For this reason, this court has a very strong preference for at least granting a *pro se* plaintiff the opportunity to conduct discovery, so that it might ascertain whether there is any real substance to his claims, regardless of how inartfully they might have been set forth in the complaint. In electing to follow this approach in this case, this court was motivated largely by the fact that, while the complaint included a number of bizarre allegations and inappropriate language, there were at least some parts of it in which plaintiff appeared to be attempting to make out a valid federal claim.

In granting plaintiff an opportunity to conduct discovery, this court hoped that he might move on from some of the more bizarre allegations of his complaint and at least provide some factual substance to his (at least potentially) stronger allegations. Suffice it to say, this did not occur. Indeed, at many points in plaintiff's summary judgment response, he fails to make coherent arguments at all. For example, plaintiff argues at one point that he "suffered from harassment by an Amazon.com Services, LLC Area Manager Your being written up for having 100% mind boggling." [Response at 1-2]. At many other points in his brief, plaintiff makes bare

allegations without any citation to a page in the record which might enable this court to ascertain the veracity of what he says. While this court is willing to grant *pro se* plaintiffs leniency in some aspects of their briefing, the requirement that a summary judgment brief be supported by specific facts cited in the record is a fundamental one which it cannot ignore.

For its part, Amazon's summary judgment briefing strikes this court as demonstrating a commendable degree of patience with plaintiff's allegations, setting forth an extensive amount of legal precedent which argues in favor of this court granting its summary judgment motion. In contrast, plaintiff's own briefing fails to cite a single precedential case in support of his claims, which leaves the defendant's legal arguments largely uncontested. Indeed, plaintiff specifically concedes that his age discrimination and retaliation claims lack merit,[1] and these claims will therefore be dismissed. This leaves plaintiff's hostile work environment, "unlawful employment practices" and sex discrimination claims for this court to consider, but it strikes this court that each of these claims, are in substance, sex discrimination claims.

This court notes parenthetically that, by concentrating on the sex-related allegations which clearly seem to interest him most, plaintiff is concentrating on the most bizarre and factually implausible allegations of his complaint. Indeed, this court would not have allowed this case to proceed to discovery at all if plaintiff had made clear in his response to the motion to dismiss that he would choose to focus so heavily on these issues. While this court thus harbors a

---

[1] In his brief, plaintiff asserts that "there is no age claim listed in the complaint," which seemingly indicates that factual references to age discrimination in the complaint were not intended to assert a formal age discrimination claim. [Brief at 5] Even assuming that this is somehow incorrect, the fact remains that plaintiff fails to provide any real response to defendant's arguments for dismissal of any such claim, and, as discussed below, this court can discern no genuine issue of fact as to whether either plaintiff's age or sex played any role in his (initial) termination. Plaintiff's age discrimination claim is thus due to be dismissed even if it is assumed that he did assert such a claim in his complaint.

certain degree of regret in choosing to let this case proceed to discovery at all, it will now duly address the remaining, sex-related, claims in this case.

With regard to plaintiff's hostile work environment claim, it is well settled that to establish a hostile work environment claim, a plaintiff must prove that: (1) he is in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his status as a member of the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Celestine v. Petroleos de Venez. SA,* 266 F.3d 343, 353 (5th Cir. 2001). Harassment affects a term or condition of employment when it is so severe that it alters the conditions of the victim's employment and creates an abusive working environment. *McNealy v. Emerson Elec. Co.*, 121 F. App'x 29, 34 (5th Cir. 2005).

It is difficult for this court to address the substance of plaintiff's hostile work environment claims, since they relate to bizarre and highly implausible allegations that there was a "sex event" on the floor of the Amazon facility in which, at times, plaintiff appears to complain about *not* being allowed to witness. In his deposition, plaintiff did not provide any greater clarity regarding what exactly he is referring to in this regard, testifying that:

> Q. …. What is it that created a hostile work environment, in your opinion? ….
> A. I did not know what was going on, and then to be told by a person who had already had a – going to the office with prior, that – the same lady, the one she needed to request my file with no work and now I'm on a paid suspension for an event that I don't know of. And to say I'm not ready for the sex side and to say that I'll be put on paid suspension to not see a sex event, as in the actual warehouse was turned into a sex event was being – occurring at 3:30 a.m. known by everyone in outbound that was able to –you know, to hear auditorally [sic], as it was building towards it, I was escorted and then left the property, that that was hostile.

[Ex. B, p. 145:11-146:5.]

If this court were to engage in the highly generous assumption that public sex events were actually occurring at an Amazon warehouse, with all its (presumably) extensive

surveillance and security measures, then it can easily understand how an employee who was forced to witness such an event against his will would regard it as an example of a hostile work environment. In this case, however, plaintiff makes clear that he did not, in fact, witness the alleged sex event, allegedly based upon an Amazon manager's assessment that he was "not ready for the sex side." [*Id.*] If plaintiff's allegations seem to suggest a certain degree of disappointment that he was not allowed to witness the alleged sex event, this impression is strengthened by his description of his romantic feelings for the alleged female Amazon worker who, he contends, was involved in the event.

In his complaint, plaintiff entitles part of his factual allegations as a "coming of age story" for an alleged female coworker named "Chris," whom he describes as a "supermodel beauty" who was the twin sister of Olivia Turnbow, the employee who asserted a harassment complaint against him. (Doc. 16, ¶¶15, 29). With regard to his "coming of age story" allegations, plaintiff claims that on January 2, 2021, "Chris" told him that she would be having sex "in public" with three people and "asked if the Plaintiff wanted to show sperm." (Doc. 16 at 7-8). Specifically, plaintiff alleges in this complaint that:

> Chris … has always talked to the plaintiff, and the plaintiff likes her dearly. On January 2nd, 2021 prior to first break Chris said to Martrek Wingo that she was going to be having sex tonight with guys in public but promised she would be using condoms. Prior to lunch break Chris said that she was going to be having sex tonight in public with three people and asked if the Plaintiff wanted to show sperm. The plaintiff smiled and said nothing.

[Amended Complaint at 7].

In its brief, Amazon casts serious doubt on whether "Chris Turnbow" actually exists or is, instead, a figment of plaintiff's imagination, along with the alleged "sex event." [Brief at 14]. In his deposition, plaintiff reiterated that "Chris" was the identical twin sister of Amazon employee Olivia Turnbow. [Depo. at 132-33]. However, Amazon contends that Turnbow has no such

5

twin sister, thus raising the question as to whether "Chris" even exists. Specifically, Amazon writes in its brief that:

> There is no Amazon associate with the name of Chris Turnbow at MEM2. There is no associate by the name of Chris Turnbow, or any similar name, at any Amazon location. Senior HR Business Partner Nicole Stroman is familiar with MEM2 associate Olivia Turnbow and she is not aware of her having a twin sister. If Olivia Turnbow does have a twin sister, she is not employed at MEM2 or any other Amazon location.

[Brief at 14].

The mystery surrounding the alleged "Chris Turnbow" is cast in an even darker light by the fact that Amazon has submitted a January 3, 2021 written complaint submitted to it by Olivia Turnbow, who alleged that "ever since I started working here in September of 2020, I have received uncomfortable vibes and feelings" from Wingo. [Exhibit J at 1]. Indeed, plaintiff himself acknowledges in this complaint that he was confronted by Amazon managers about complaints regarding his allegedly having improperly followed "Chris" home, though he denies that he engaged in any improper conduct in this regard. [Amended Complaint at 8-9]. In the court's view, the fact that plaintiff's amended complaint alleges an Amazon investigation into his behavior towards "Chris" Turnbow, [*Id.* at 9] while the actual written investigation results only references an inquiry into complaints by "Olivia" Turnbow [Exh. U at 1-2], clearly seems to support defendant's characterization of the facts in this context.

While the evidence thus appears to support Amazon's assertion that "Chris Turnbow" does not exist, this court will accept, for the purposes of this motion, that her existence and whether or not plaintiff engaged in improper conduct towards a female co-worker are disputed fact issues in this case. In the employment discrimination context, however, the key point is that Amazon had, under plaintiff's own version of the facts, serious concerns that he had, in fact, engaged in such improper conduct, and it is further clear that such concerns constituted an

6

entirely lawful basis for his (initial) termination which is not implicated by Title VII, the ADEA, or any other federal law.[2] This is true even if this court were to assume that Amazon was mistaken regarding whether plaintiff had actually engaged in inappropriate conduct towards a female co-worker. It seems to be implicit in plaintiff's briefing that the fact that he was accused of engaging in misconduct of a sexual nature might somehow give rise to a Title VII sex discrimination or harassment claim, but this is clearly not the case. To state the obvious, Title VII was enacted to address instances of sexual harassment and discrimination suffered by the plaintiff, not to provide a claim when an employee is himself accused of having engaged in misconduct of a sexual nature.

This court does not intend to definitively resolve the mystery surrounding the alleged "Chris Turnbow," since its concern in this case is simply whether plaintiff's federal claims have any potential merit. They do not. Indeed, plaintiff's hostile work environment claims based on his failure to witness an alleged "sex event" are clearly without merit, and any suggestion that he was fired on the basis of his sex (or any other protected status) is completely lacking in any proof which this court can discern. In so stating, this court notes that the vast majority of employment discrimination plaintiffs, *pro se* or otherwise, attempt to persuade it that they would be valuable employees for the defendant to have. Plaintiff's summary judgment briefing and deposition testimony leave this court with very much the opposite impression, and it can readily discern why defendant initially concluded that it wished to part ways with him. In its briefing, defendant

---

[2] Having said that, this court does note for the record that plaintiff's denials of improper and obsessive behavior towards "Chris" and/or Olivia Turnbull are not assisted by the fact that he has seen fit to regale this court, in a federal complaint, with pronouncements of his affection for the woman whom Amazon appears to regard as an alter ego, in plaintiff's mind, for Olivia Turnbow. Needless to say, including such proclamations of romantic affection in a federal complaint represents a highly unusual action which does not lend itself to confidence in plaintiff's version of the events in this case.

submits a great deal of other legal arguments in support of dismissing this case, and, once again, plaintiff has failed to engage on these legal issues. This court does not regard plaintiff's allegations in this case as being worthy of any further discussion, and it concludes that defendant's motion for summary judgment is clearly due to be granted, for the reasons stated in this order and in defendants' summary judgment briefing.

In light of the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This 6th day of July, 2022.

    /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI